UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER
FOR WESTSOUND BANK,

　　　　　　　　Plaintiff,

　　v.

EDUARD DAVIDYUK, et al.,

　　　　　　　　Defendants.

CASE NO. C13-1592JLR

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Before the court are:  (1) Plaintiff Federal Deposit Insurance Corporation as

Receiver for Westsound Bank's ("FDIC-R") motion for a decree of judicial foreclosure

and award of attorney's fees on summary judgment (FDIC Mot. (Dkt. # 9)), and (2)

Defendants Eduard Davidyuk and Larissa Davidyuk's cross motion for summary

judgment (Def. Mot. (Dkt. # 12)).  The court has considered the motions, all submissions

filed is support of and opposition thereto, the balance of the record, and the applicable

law.  The court also heard the argument of counsel on June 23, 2014.  Being fully

advised, the court GRANTS FDIC-R's summary judgment motion for a decree of judicial

foreclosure and an award of attorney's fees under the Deed of Trust at issue.  The court

DENIES Defendants' cross motion for summary judgment, except with respect to their

motion regarding Ms. Davidyuk.  The court GRANTS Defendants' motion for summary

judgment only with respect to Ms. Davidyuk and DISMISSES her with prejudice from

this action.

## II.  BACKGROUND

On July 11, 2006, Defendant Eduard Davidyuk took out a loan from Westsound

Bank to buy real property and build a single family residence in Bellevue, Washington.

(Rossiter Aff. (Dkt. # 10) ¶ 4.)  The loan was in the form of a promissory note by Mr.

Davidyuk in the principal amount of $1.4 million payable to Westsound Bank d/b/a

Westsound Mortgage ("the Note").  (Rossiter Aff. ¶ 5, Ex. A.)  The Note was secured by

a recorded Deed of Trust, dated July 11, 2006.  (Request for Judicial Notice ("RJN")

(Dkt. # 11) Ex. 1.)[1]

---

[1] Plaintiff FDIC-R has requested that the court take judicial notice of certain facts and
several documents that it submits in support of its motion for summary judgment.  (Request
(Dkt. # 11).)  The documents the FDIC-R submits are:  the Deed of Trust at issue here,
modifications to the Deed of Trust, a complaint filed in King County Superior Court for the State
of Washington, a judgment by default and a copy of the docket in the same state court case, and
a press release issued by the Federal Deposit Insurance Corporation announcing the closure of
Westsound Bank by the Washington Department of Financial Institutions and the appointment of
the FDIC-R as receiver.  (*See id.* Exs. 1-7.)  FDIC-R requests that the court take judicial notice of
facts derived directly from these documents.  (*Id.* at 3-6.)  Defendants do not object to FDIC-R's
request.  (*See generally* Dkt.; Def. Mot.)  Indeed, Defendants repeatedly rely upon the facts and
documents submitted by FDIC-R in their own cross motion for summary judgment.  (*See* Def.
Mot. at 4.)  The court finds that the documents submitted by FDIC-R and the facts derived

1       Mr. Davidyuk modified the loan terms with Westsound Bank three times.  First,

2 on June 28, 2007, he entered into an agreement which extended the maturity date and

3 increased the available principal to $1.5 million.  (Rossiter Aff. ¶ 6, Ex. B.)  He entered

4 into a modification to the Deed of Trust to secure the additional $100,000.00 of debt,

5 which was recorded on July 27, 2007.  (*See* RJN Ex. 2.)  Second, on February 1, 2008, he

6 entered into a Change of Terms Agreement with Westsound Bank, which extended the

7 maturity date, changed the interest rate, and increased the available principal by

8 $172,000.00 to $1,672,100.00.  (Rossiter Aff. ¶ 7, Ex. C.)  He entered into a modification

9 of the Deed of Trust to secure this additional $172,000.00, which was recorded on March

10 5, 2008.  (*See* RJN Ex. 3.)  Third, on April 15, 2008, he entered into another Change of

11 Terms Agreement with Westsound Bank to alter the maturity date of the loan to August

12 10, 2008.  (Rossiter Aff. ¶ 8, Ex. D.)

13       Westsound Bank filed a complaint against Mr. Davidyuk on September 26, 2008,

14 in King County Superior Court for the State of Washington, alleging that he had

15 defaulted on his loan obligations.  (*See* RJN Ex. 4.)  On May 6, 2009, King County

16 Superior Court awarded Westsound Bank a default judgment against Mr. Davidyuk.  (*See*

17 *id.* Ex. 5.)  Judgment was entered against Mr. Davidyuk in the amount of $1,648,355.48,

18 plus pre-judgment interest, attorney's fees, costs, and expenses, totaling $1,766,760.44.

19 (*See id.*)  Mr. Davidyuk did not appeal this judgment (*see id.* Ex. 6), and he has made no

20 payments on the judgment to Westsound Bank (Rossiter Aff. ¶ 10).  The parties do not

21

22 therefrom are appropriate for judicial notice under the Federal Rules of Evidence, *see* Fed. R.
Evid. 201(b)(2), and therefore GRANTS FDIC-R's request.

1    dispute that, although Westsound Bank sued on the Note and obtained a default

2    judgment, Westsound Bank did not seek to foreclose on the property.  (*See* FDIC-R Mot.

3    at 4-5, 8-9; Def. Mot. at 4.)

4            Two days later, on May 8, 2009, the Washington State Department of Financial

5    Institutions closed Westsound Bank and appointed FDIC-R as receiver.  (*See id.* Ex. 7.)

6    As Westsound Bank's successor-in-interest, FDIC-R assumed all of Westsound Bank's

7    rights, titles, powers, privileges, operations, and assets.  (Rossiter Aff. ¶ 10.)  Due to its

8    appointment as receiver, FDIC-R became the holder of the Note and the beneficial

9    interest in the Deed of Trust.  FDIC-R has not received any payment on the judgment

10   since it succeeded to Westsound Bank's assets, although insurance proceeds were applied

11   to reduce the interest due on the judgment.  (Rossiter Aff. ¶ 11.)  The amount of

12   $2,045,102.40, including interest through April 2014, is currently due and owing on the

13   judgment.  (*Id.* ¶ 12.)

14           On August 29, 2012, FDIC-R filed a complaint against Defendants for judicial

15   foreclosure in King County Superior Court.  (Notice (Dkt. # 1) ¶ 3.)  On June 7, 2013,

16   Defendants filed an Answer, Affirmative Defenses, and Set-Offs in response to FDIC-R's

17   complaint.  (*Id.* ¶ 3.)  Unlike Westsound Bank's action in King County Superior Court

18   against Mr. Davidyuk on the Note, the FDIC-R's action for judicial foreclosure included

19   Ms. Davidyuk as a defendant.  (*See id.* Ex. A.)

20           On September 4, 2013, over a year after filing in state court, FDIC-R removed the

21   suit to federal district court.  (*See generally* Notice.)  Defendants did not initially oppose

22   FDIC-R's removal by filing a motion for remand.  On April 17, 2014, FDIC-R filed this

motion for summary judgment seeking a decree of judicial foreclosure on the property

and an award of attorney fees under the Deed of Trust.  (*See generally* FDIC-R Mot.)

FDIC-R argues that Defendants various affirmative defenses are either invalid or do not

otherwise prevent the entry of summary judgment in its favor.  (*See id.* at 8-19.)

On May 5, 2014, Defendants responded to FDIC-R's motion and also cross-

moved for summary judgment.  (*See generally* Def. Mot.)  Although Defendants did not

move for remand when FDIC-R initially removed this case to federal court, they now

argue in their cross-motion for summary judgment that FDIC-R improvidently removed

the action from state court and that this court therefore lacks subject matter jurisdiction.

(*Id.* at 8-15.)  Defendants also argue that (1) this action must be dismissed because the

statute of limitations on the Note has expired (*id.* at 15-16), and (2) Ms. Davidyuk should

be dismissed because she is an improper party (*id.* at 16-19).  Finally, Defendants argue

that their various affirmative defenses prevent the entry of summary judgment in FDIC-

R's favor and that FDIC-R is not entitled to an award of attorney fees.  (*Id.* at 19-28.)[2]

---

[2] Defendants filed a cross motion and memorandum in opposition to FDIC-R's motion that is 28 pages long (not including the caption and signature block) and therefore exceeds the page limitation established by the court's local rules.  *See* Local Rules W.D. Wash. LCR 7(e)(3) ("Motions for summary judgment . . . and briefs in opposition shall not exceed twenty-four pages.").  Defendants did not move for permission to file an over-length memorandum.  (*See generally* Dkt.)  Under the court's local rules, the court "may refuse to consider any text, including footnotes, which is not included within the page limits."  *Id.* LCR 7(e)(6).  The court warns Defendants that future failure to abide by the court's local rule on page limitations may result in the court refusing to consider any material outside of the limit.  *Id.*  Because FDIC-R did not object, however, the court exercises its discretion to consider the entirety of Defendants' memorandum here.

1   Defendants have raised a challenge to the court's subject matter jurisdiction, and

2   therefore the court must initially address this issue before turning to any others.  As

3   discussed below, however, the court finds that it has subject matter jurisdiction over this

4   proceeding, and that FDIC-R is entitled to a decree of judicial foreclosure and an award

5   of attorney fees.  As such, the court GRANTS FDIC-R's motion for summary judgment

6   and DENIES Defendants' cross motion.

7   ### III.  ANALYSIS

8   **A.  Standards Governing the Parties' Motions**

9   The parties have styled their motions as cross motions for summary judgment.

10   (*See* Stip. (Dkt. # 13) at 1-2.)  The standards that govern such motions under Federal Rule

11   of Civil Procedure 56 are familiar.  Summary judgment is appropriate if the evidence,

12   when viewed in the light most favorable to the non-moving party, demonstrates "that

13   there is no genuine dispute as to any material fact and the movant is entitled to judgment

14   as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

15   322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  Where cross

16   motions are at issue, the court must "evaluate each motion separately, giving the

17   nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of*

18   *Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (citations omitted); *see*

19   *also Friends of Columbia Gorge, Inc. v. Schafer*, 624 F. Supp. 2d 1253, 1263 (D. Or.

20   2008).

21   Defendants have also moved to dismiss under Federal Rule Civil Procedure

22   12(b)(1) for lack of subject matter jurisdiction.  (Def. Mot. at 3.)  The Ninth Circuit

ORDER- 6

1    recently clarified that the existence of removal jurisdiction should be resolved within the

2    same framework as Rule 12(b)(1) motion.  *Leite v. Crane Co.*, --- F.3d ----, 2014 WL

3    1646924, at *3 (9th Cir. 2014).[3]  Under Rule 12(b)(1), a defendant may challenge the

4    plaintiff's jurisdictional allegations in one of two ways:  (1) a "facial" attack that accepts

5    the truth of the plaintiff's allegations by asserts that they are insufficient on their fact to

6    invoke federal jurisdiction, or (2) a "factual" attack that contests the truth of the

7    plaintiff's factual allegations, usually by introducing evidence outside the pleadings.  *Id.*

8    at *2.

9          When a party raises a facial attack, the court resolves the motion as it would under

10   Federal Rule of Civil Procedure 12(b)(6)—accepting all reasonable inferences in the

11   plaintiff's favor and determining whether the allegations are sufficient as a legal matter to

12   invoke the court's jurisdiction.  *Leite*, 2014 WL 1646924, at *2.  When a party raises a

13   factual attack, the court applies the same evidentiary standard as it would in the context

14   of a motion for summary judgment.  *Id.*  The party invoking the court's subject matter

15   jurisdiction "bears the burden of proving by a preponderance of the evidence that each of

16

17   ───────────────

18        [3] FDIC-R enjoys broad removal authority under 12 U.S.C. § 1819(b)(2)(B) that goes
     beyond the privileges that Congress granted under the general removal statue.  *See Allen v.*
19   *FDIC*, 710 F.3d 978, 980-81 (9th Cir. 2014).  *Leite* involved the federal officer removal statute
     under which defendants similarly "enjoy much broader removal rights . . . than they do under the
20   general removal statute."  2014 WL 1646924, at *3.  The Ninth Circuit nevertheless concluded
     that "applying the Rule 12(b)(1) framework to resolve jurisdictional challenges . . . w[ould] not
21   unduly burden the unique rights [the federal officer removal statute] affords removing
     defendants."  *Id.*  The court similarly concludes here that applying the Rule 12(b)(1) framework
22   is an appropriate standard for considering Defendants' motion with respect to FDIC-R's removal
     of this action under 12 U.S.C. § 1819(b)(2)(B).

the requirements for subject-matter jurisdiction has been met."[4]  *Id.*  However, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself."  *Id.*

### B.  Removal Jurisdiction

FDIC-R removed this action pursuant to a provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, § 407, 103 Stat. 183, 363 (1989), which provides in part that FDIC-R may "remove any action, suit, or proceeding from a State court to the appropriate United States [d]istrict [c]ourt before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against [FDIC-R] or [FDIC-R] is substituted as a party."  (*See*  Notice ¶ 5 (quoting 12 U.S.C. § 1819(b)(2)(B).)  FDIC-R asserts in its Notice of Removal that Defendants' affirmative defense for "a set off for fraud committed by the original lender" (*id.* Ex. B ("Answer") at 3) is actually a claim "against the Bank alleging fraud by the

---

[4] Under *Leite*, because FDIC-R removed the action to federal court, thus invoking the court's jurisdiction, it would bear the burden of establishing removal jurisdiction.  However, some courts have found that "these general principles are modified by statute and case law in an action where jurisdiction exists because [FDIC-R] is a party."  *Applegate v. FDIC*, No. CV410–302, 2012 WL 1099036, at *2 (S.D. Ga. Mar. 30, 2012).  For example, the Eleventh Circuit has found that the burden of proving a lack of federal jurisdiction rests on the party opposing FDIC's removal of a proceeding.  *See, e.g.*, *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785 (11th Cir. 2005) (placing the burden on the party seeking to defeat removal).  The court need not decide this issue, however.  Irrespective of whether FDIC-R bears the burden of establishing the court's jurisdiction or Defendants bear the burden of proving a lack of jurisdiction, as discussed in the body of this order below, the court finds that FDIC-R's removal of this action was proper and that the court retains subject matter jurisdiction over this proceeding.

1  original lender" (*id.* ¶ 7; *see also* FDIC-R Resp. (Dkt. # 19) at 3).[5]  In its Notice of

2  Removal, FDIC-R posits that Defendants' assertion of this affirmative defense, which

3  FDIC-R characterizes as a counterclaim, entitles it to remove the action to federal district

4  court.[6]  (*See generally* Notice; *see also* FDIC-R Resp. at 3.)

5         The Ninth Circuit has "expressed a willingness to disregard labels," such as

6  "affirmative defense" or "counterclaim," and "characterize an action according to its

7  substance."  *In re Parker N. Am. Corp.*, 24 F.3d 1145, 1155 (9th Cir. 1994).  Further, at

8  least one circuit court of appeals has recognized that the filing of a counterclaim against

9  the FDIC will trigger the 90-day removal period under 12 U.S.C. § 1819(b)(2)(B).  *See*

10  *F.D.I.C. v. S & I 85–1, Ltd.*, 22 F.3d 1070, 1074 (11th Cir. 1994) ("We hold that the

11  counterclaims filed by the Defendants constituted an 'action, suit, or proceeding' within

12  the meaning of the statute. We therefore conclude that the filing of those counterclaims

13  triggered FDIC's removal rights.").

14         Defendants nevertheless move to dismiss for lack of subject matter jurisdiction.[7]

15  (*See* Def. Mot. at 8-15.)  Defendants challenge the propriety of FDIC-R's removal of this

16  _____

17         [5] Although it is unclear from either FDIC-R's Notice of Removal or its memorandum in

18  response to Defendants' cross motion for summary judgment, FDIC-R may be asserting that
    other affirmative defenses alleged by Defendants should also be construed as counterclaims.

19         [6] FDIC-R alleged in its notice of removal that the court could exercise supplemental

20  jurisdiction under 28 U.S.C. § 1367(a) over the remainder of the state law claims asserted in
    Defendants' answer.  (Notice ¶ 8.)

21         [7] Section 1447(c) of Title 28 states in part that "[i]f at any time before final judgment it

22  appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  The
    Ninth Circuit has held that the mandatory remand language of § 1447(c) applies if a case is
    removed from state court without proper removal jurisdiction in federal court. *See Albingia*

1  action from state court on two grounds.  First, Defendants assert that even if their

2  affirmative defense can be properly characterized as a counterclaim for fraud, it would

3  fall within the "State actions" exception found in 12 U.S.C. § 1819(b)(2)(D) to FDIC-R's

4  otherwise broad grant of removal authority in 12 U.S.C. § 1819(b)(2)(B).  (*Id.* at 8-12.)

5  Second, Defendants assert that they have not exhausted the administrative remedies

6  available under 12 U.S.C. § 1819(d) with respect to their counterclaim for fraud, and the

7  court lacks jurisdiction over any such unexhausted claim or counterclaim.  Defendants

8  assert that because the court lacks subject matter jurisdiction over the counterclaim that

9  FDIC-R asserts triggered its right to remove, the removal was improper and the court

10 lacks jurisdiction.[8]  (Def. Mot. at 8-15.)

11 **1.  State Actions Exception**

12    Section 1819(b)(2)(D) of Title 12 provides an exception, known as the "State

13 actions" exception, to the otherwise broad grant of removal authority provided to FDIC-R

14 in 12 U.S.C. § 1819(b)(2)(B).  *See* 12 U.S.C. § 1819(b)(2)(D).  Section 1819(b)(2)(D)

15

---

16 *Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937-38 (9th Cir. 2003), *modified on
   other grounds*, 350 F.3d 916 (9th Cir. 2003) ("[Section] 1447(c) merely addresses the

17 *consequences* of a jurisdictional flaw, *i.e.* it mandates a remand rather than dismissal.") (italics in
   original; quoting *Parker PPA v. Delia Rocco, Jr.*, 252 F.3d 663, 666 (2d Cir. 2001).  Thus,

18 assuming that the court lacks removal jurisdiction as Defendants argue, the appropriate remedy
   here would be a remand to state court rather than dismissal.

19
      [8] Because Defendants waited more than 30 days to file their present motion asserting a

20 lack of removal jurisdiction, any procedural defects in the FDIC-R's removal are waived.  *See N.
   Cal. Dist. Council of Labor v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir.

21 1995) ("A motion to remand based on a defect in removal procedure must be filed within 30
   days after the notice of removal is filed.") (citing 28 U.S.C. § 1447(c)).  Defendants do not assert

22 any non-jurisdictional procedural defects in FDIC-R's removal.  (*See generally* Def. Mot.)

defines a State action (with one exception not relevant here)[9] as one (1) to which FDIC-R "is a party other than as a plaintiff," (2) "which involves only the preclosing rights against the State insured depository institution, or obligations owning to, depositors, creditors, or stockholder by the State insured depository institution," and (3) "in which only the interpretation of the law of such State is necessary." *Id.*  If a claim meets all three of these criteria, then FDIC-R has no right to remove. *See id.*  Defendants assert that, even if their affirmative defense for fraud should be construed as a counterclaim, any such counterclaim for fraud would fall within the "State actions" exception precluding the court's exercise of removal jurisdiction here.

FDIC-R counters that none of the three elements required for application of the "State actions" exception is present here.  (FDIC-R Resp. at 4-8.)  The court need not consider the first two elements because it finds that the third is not met.  FDIC-R asserts that Defendants have ignored FDIC-R's available federal defenses to the fraud counterclaim including the *D'Oench, Duhme* doctrine[10] and 12 U.S.C. § 1823(e), which will require the interpretation of federal law.  (FDIC-R Resp. at 7-8.)  Thus, FDIC-R argues that the third element necessary for the State actions exception to apply—an action in which only the interpretation of state law is necessary—is absent. *See* 12 U.S.C. § 1819(b)(2)(D)(iii).

---

[9] *See* 12 U.S.C. § 1819(b)(2)(E).

[10] *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942).

In deciding whether the interpretation of federal or only state law will be necessary under 12 U.S.C. § 1819(b)(2)(D)(iii), the court is not restricted to the "well pleaded complaint" rule,[11] but may look to FDIC-R's defenses as well.  *See, e.g.*, *Diaz v. McAllen State Bank*, 975 F.2d 1145, 1149-50 (5th Cir. 1992); *Capizzi v. FDIC*, 937 F.2d 8, 1011 (1st Cir. 1991); *Lazuka v. FDIC*, 931 F.2d 1530, 1533-34, 1538 (11th Cir. 1991) (superseded by statute on other grounds); *Reding v. FDIC*, 942 F.2d 1254, 1257-58 (8th Cir. 1991).  For the exception to be inapplicable, the FDIC-R must assert a defense that raises a colorable issue of federal law.  *Lazuka*, 931 F.2d at 1533; *Reding*, 942 F.2d at 1258.

Defendants have described their claim as one for fraud in the inducement.  (Def. Mot. at 12 ("Here the Davidyuks seek the set-off based on fraud in the inducement of a contract entered into by [Mr.] Davidyuk and Westsound bank.").)  "Under *D'Oench, Duhme* and its progeny, borrowers cannot assert an unrecorded side agreement with a failed bank as a defense to their liability on a note held by the FDIC."  *Resolution Trust Corp. v. Miller*, 67 F.3d 308 (9th Cir.1995).  The *D'Oench, Duhme* doctrine was codified, in part, at 12 U.S.C. § 1823(e).  *Resolution Trust Corp. v. Kennelly*, 57 F.3d 819, 822 n.3 (9th Cir. 1995).  In *Langley v. FDIC*, 484 U.S. 86 (1987), the Supreme Court applied the

---

[11] The well-pleaded complaint rule as applied to removal cases requires that, for a case to be removable, the complaint must initially show the existence of a federal question; federal law must create the claim.  *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 808-09 (1986).  The federal question must be "presented on the face of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).

1  *D'Oench, Dehme* doctrine and 12 U.S.C. § 1823(e) in holding that defendants who

2  executed a promissory note to finance a land purchase induced by affirmative

3  misrepresentations made by the lending bank's president were estopped from asserting

4  the defense of fraud against the FDIC as receiver of the bank.  *See generally id.*  Thus,

5  both the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) would appear to be colorable

6  defenses for FDIC-R to assert with respect to Defendants' counterclaim for fraud in the

7  inducement.[12]  Numerous courts have found that FDIC's assertion of these defenses raise

8  colorable issues of federal law.  *See Diaz v. McAllen State Bank*, 975 F.2d 1145, 1149

9  (5th Cir. 1992); *Reding*, 942 F.2d at 1259; *Pyle v. Meritor Savings Bank*, 821 F. Supp.

10  1072, 1078 (E.D. Pa. 1993); *Lokey v. FDIC*, No. CV411-146, 2012 WL 1100789, at *3-4

11  (S.D. Ga. Mar. 30, 2012); *FDIC v. McCann*, NO. 2:10-cv-14962, 2011 WL 5039879, at

12  *2 (E.D. Mich. Oct. 24, 2011).  This court agrees.  Thus, the court DENIES Defendants'

13  motion to dismiss for lack of subject matter jurisdiction based on the "State actions"

14  exception to FDIC-R's broad removal powers.[13]

15

16  _____

17  [12] Although FDIC-R invokes the *D'Oench, Duhme* doctrine, the Ninth Circuit has held
    that the doctrine does not apply where the FDIC acts as receiver for a failed bank because no
18  federal interest exists to justify the application of federal common law.  *Ledo Fin. Corp. v.
    Summers*, 122 F.3d 825, 828-30 (9th Cir. 1997) (discussing *Atherton v. FDIC*, 519 U.S. 213
19  (1997); *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994)).  The court need not decide this issue
    here, however, because FDIC-R's invocation of a defense based on 12 U.S.C. § 1823(e) alone is
20  sufficient for the court to conclude that the "State actions" exception to the court's removal
    jurisdiction does not apply.

21  [13] In addition, FDIC-R has tangentially raised the issue of Defendants' failure to exhaust
    their administrative remedies with respect to their fraud claim.  (*See* FDIC-R Resp. at 3
22  ("Defendants concede they have not followed FIRREA's claim procedure such that this Court is
    left without jurisdiction over the fraud claim.") (internal quotation marks omitted).)  This is also

ORDER- 13

### 2.   Failure to Exhaust Administrative Remedies

Defendants' second argument with respect to subject matter jurisdiction is more troubling for the court.  Defendants assert that, because they have not exhausted their administrative remedies under FIRREA, the court lacks subject matter jurisdiction over any counterclaim that they may have asserted in their answer to FDIC-R's complaint. Defendants argue that because the court has no subject matter jurisdiction over counterclaim that serves as the hook for FDIC's removal (*see* Notice ¶ 7), the court may not assert subject matter jurisdiction over the proceeding as a whole.  (Def. Mot. at 12-14.)  Although Defendants' argument presents a perplexing jurisdictional conundrum, as discussed below, the court concludes that it nevertheless may assert subject matter jurisdiction over this proceeding.

The parties do not dispute that Defendants have failed to exhaust the mandatory FIRREA administrative-claims process outlined in 12 U.S.C. 1823(d) with respect to any counterclaim that is asserted in their answer to FDIC-R's complaint.  (*See* Def. Mot. at 14; Plf. Resp. at 3.)  The Ninth Circuit has repeatedly held that claimants must exhaust their administrative remedies under FIRREA before seeking judicial review and that a party's failure to so do divests the court of jurisdiction over both claims and counterclaims.  *See McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1079 (9th Cir. 2003) (holding that "the [12 U.S.C.] § 1821(d) jurisdictional bar is not limited to claims by 'creditors,' but extends to all claims and actions against, and actions seeking a determination of

---

a defense to Defendants' fraud claim based on federal law.  *See McCann*, 2011 WL 5039784, at *3.

1   rights with respect to, the assets of failed financial institutions for which the FDIC serves

2   as receiver including debtors' claims"); *Intercontinental Travel Marketing, Inc. v.*

3   *F.D.I.C.*, 45 F.3d 1278, 1282-83 (9th Cir. 1994) ("Because [plaintiff] failed to properly

4   exhaust the statutorily mandated exhaustion requirements of [12 U.S.C.] § 1821(d), no

5   jurisdiction exists over its action."); *Parker N. Am. Corp. v. Resolution Trust Corp.*, 24

6   F.3d 1145, 1150 (9th Cir. 1994) (citing *Resolution Trust Corp. v. Midwest Fed. Sav.*

7   *Bank.*, 4 F.3d 1490, 1495 (9th Cir. 1993)); *Henderson v. Bank of New England*, 986 F.2d

8   319, 320-21 (9th Cir. 1993) (holding district court lacked subject matter jurisdiction

9   because FIRREA "contains no provision granting federal jurisdiction to claims filed after

10  a receiver is appointed but before administrative exhaustion" and "[§] 1821(d)(13)(D)

11  strips all courts of jurisdiction over claims made outside the administrative procedures of

12  [§] 1821").

13        In addition, the FDIC has repeatedly and successfully asserted in other cases that

14  the court lacks subject-matter jurisdiction over a party's counterclaims or claims where

15  the party has failed to exhaust FIRREA's administrative claims process. *See, e.g.*, *FDIC*

16  *v. Red Hot Corner, LLC*, No. 2:11-cv-1283-JAD-PAL, 2013 WL 6244164, at *1 (D. Nev.

17  Dec. 3, 2013) (granting FDIC's motion to dismiss in which FDIC "contend[ed] that th[e]

18  Court lack[ed] subject-matter-jurisdiction over the counterclaims because the Defendants

19  failed to exhaust the mandatory FDIC-review process under [FIRREA]"); *Potter v.*

20  *JPMorgan Chase Bank, N.A*, No. CV 13-863 CAS (AGRx), 2013 WL 1912718, at *11

21  (C.D. Cal. May 8, 2013) (granting FDIC's motion to dismiss for lack of subject matter

22  jurisdiction because plaintiffs' claims were not submitted to the claims resolution process

ORDER- 15

1   as required under FIRREA); *FDIC v. Twin Dev., LLC*, No. 10-cv-2279-BEN (KSC),

2   2012 WL 1831639, at *4 (S.D. Cal. May 18, 2012) (ruling in FDIC's favor that

3   defendants' proposed counterclaim failed for failure to exhaust administrative remedies

4   under FIRREA); *CADC-RADC Venture 2011-1, LLC v. Stewart*, No. 2:10-cv-00647-EJL-

5   MHW, 2012 WL 368325, at *4-5 (D. Idaho Jan. 12, 2012) (recommending granting

6   FDIC-R's motion to dismiss based on FDIC-R's contention "that FIRREA mandates that

7   the [defendants] exhaust the administrative claims process related to their counterclaims

8   before jurisdiction may attach in this Court").  Defendants argue that permitting FDIC-R

9   to assert as a basis for the court's removal jurisdiction the very type of claim or

10  counterclaim over which it has previously asserted the court lacked subject matter

11  jurisdiction would be entirely inconsistent with the foregoing case authority.[14]

12      FDIC-R implicitly acknowledges that the court lacks subject matter jurisdiction

13  over any counterclaims alleged by Defendants due to Defendants' failure to timely adhere

14  to FIRREA's administrative claims process.  (*See* FDIC-R Resp. at 3.)  It nevertheless

15  _____

16      [14] In *Potter*, the plaintiffs argued that their claims against the FDIC should not be
    dismissed for lack of subject matter jurisdiction because "the rules requiring timely exhaustion of
    the administrative claims process are not jurisdictional."  2013 WL 1912718, at *5.  Although

17  the *Potter* plaintiffs acknowledged that this position ran "contrary to decades old decisions in the
    Ninth Circuit interpreting FIRREA, they argued that more recent Supreme Court decisions

18  indicated a shift in the law away from interpreting statutory requirements as jurisdictional and
    toward interpreting such requirements as a mere element in a claim for relief.  *See id.* (citing

19  *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154
    (2010); *Henderson ex rel. Henderson v. Shinseki*, --- U.S. ----, 131 S.Ct. 1197 (2011)).  The

20  *Potter* court carefully examined the Supreme Court cases at issue, as well as FIRREA's statutory
    language, and nevertheless concluded that a court has no subject matter jurisdiction to hear a

21  claim against the FDIC unless the claimant had timely complied with FIRREA's administrative
    claims process.  2013 WL 1912718, at *5-7.  Based on the *Potter* court's reasoning, this court is

22  persuaded that timely compliance with FIRREA's administrative claim process is jurisdictional
    in nature.

1   asserts that the court has subject matter jurisdiction because Defendants asserted the

2   claim, the "claim directly invokes this [c]ourt's subject matter jurisdiction," "and the

3   claim has not been dismissed –voluntarily or involuntarily." (*Id.*)

4          The court notes that in the context of the general federal removal statue, the

5   removal of a claim over which the court otherwise lacks subject matter jurisdiction would

6   be improper.  The general federal removal statue allows a defendant to remove to federal

7   district court "any civil action brought in a State court of which the district courts of the

8   United States have original jurisdiction." 28 U.S.C. § 1441(a).  Under this provision,

9   "[o]nly state-court actions that originally could have been filed in federal court may be

10  removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386,

11  392 (1987).  A claim such as Defendants assert here, over which the court lacks subject

12  matter jurisdiction due to a failure to exhaust administrative remedies, could not have

13  been properly removed from state court under 28 U.S.C. § 1441(a) because the federal

14  court would lack original jurisdiction over the claim.  *See, e.g.*, *Davis v. N.C. Dep't of*

15  *Corrections*, 48 F.3d 134, 140 (4th Cir. 1995) ("Because the district court . . . would not

16  have had original jurisdiction over [plaintiff's] claim, as would be true in any case where

17  a plaintiff has yet to have his discrimination claim considered by the EEOC, it was

18  likewise without removal jurisdiction to consider [plaintiff's] complaint.").  This is so

19  because, under the general federal removal statute, the right to remove the action depends

20  on the nature and quality of the claim being removed.  Removal must be based on a claim

21  "of which the district courts of the United States have original jurisdiction." 28 U.S.C.

22  § 1441(a).

1    The same is not true with respect to 12 U.S.C. § 1819(b)(2)(B), which is the

2    statute underpinning FDIC-R's removal of this action.  That provision states that FDIC-R

3    "may . . . remove any action, suit, or proceeding . . . within the 90-day period beginning

4    on the date the action, suit, or proceeding is filed against [FDIC-R] or [FDIC-R] is

5    substituted as a party."  12 U.S.C. § 1819(b)(2)(B).  Thus, removal under this provision is

6    not dependent on the nature of the claim asserted but on the status of FDIC-R as a party.

7    Similarly, section 1819(b)(2)(A), which defines the court's general jurisdiction over suits

8    involving FDIC-R, states that (with the exception of "State actions") "all suits of a civil

9    nature at common law or in equity to which [FDIC-R], in any capacity, is a party shall be

10   deemed to arise under the laws of the United States."  12 U.S.C. § 1819(b)(2)(A).  Thus,

11   once again, Congress defined the court's jurisdiction in relation to the status of FDIC-R

12   as a party in the suit rather than the nature of the claim involved.  *See Kirkbride v.*

13   *Continental Cas. Co.*, 933 F.2d 729, 731-32 (9th Cir. 1991) ("We reaffirm that the grant

14   of subject matter jurisdiction contained in FDIC's removal statute evidences 'Congress'

15   desire that cases involving FDIC should generally be heard and decided by the federal

16   courts.'") (quoting *FDIC v. Nichols*, 885 F.2d 633, 636 (9th Cir. 1989)); *Carrollton-*

17   *Farmers Branch Indep. School Dist. v. Johnson & Cravens, 13911, Inc*., 889 F.2d 571,

18   572 (5th Cir. 1989) (FIRREA expands federal jurisdiction when FDIC is a party); *Triland*

19   *Holdings & Co. v. Sunbelt Service Corp*., 884 F.2d 205, 207 (5th Cir. 1989) (FIRREA

20   gives FDIC very broad removal power when FDIC is a party).

21       The court recognizes that this circumstance creates an unusual jurisdictional

22   anomaly.  Here, the FDIC-R can remove the action based on Defendants' assertion of a

1    counterclaim against it, but then immediately move in federal court to dismiss the

2    counterclaim on grounds that the court lacks subject matter jurisdiction.  Although the

3    occurrence of this circumstance may be rare, other courts have expressed concern or

4    dismay at this outcome.  *See Esponiosa v. DeVasto*, 818 F. Supp. 438, 444 n.10 (D. Mass.

5    1993) (noting "distaste for the 'inherent injustice that results from interpreting [FIRREA]

6    to allow removal of a case to federal district court only to be followed by a motion to

7    dismiss for lack of subject matter jurisdiction by the removing party'" (alterations in

8    original) (quoting *FDIC v. Grillo*, 788 F. Supp. 641, 648 (D.N.H. 1992)).  Despite the

9    seeming "inherent injustice," this is the result required by the statutory language.

10          Further, the fact that the court must now dismiss Defendants' counterclaim for

11    fraud because it lacks subject matter jurisdiction over the claim,[15] does not mean that the

12    court is required or even permitted to remand the proceeding to state court.  Irrespective

13    of the continued vitality of Defendants' counterclaim, because the court concludes that

14    FDIC-R properly removed this action to federal court under 12 U.S.C. § 1819(b)(2)(B),

15    the court continues to have jurisdiction pursuant to the broad grant of jurisdictional

16    authority found in 12 U.S.C. § 1819(b)(2)(A) over "all suits . . . to which [FDIC-R], in

17

18    ———————————

      [15] Even though FDIC-R has not asked for dismissal of this counterclaim, the court has an
      independent obligation to address *sua sponte* whether it has subject matter jurisdiction.  *Allstate*

19    *Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004).  The court provided notice to the parties
      concerning this issue (*see* Ord. Sched. Oral Argument (Dkt. # 22) at 2-4), and the parties had an
      opportunity to address it in oral argument to the court on June 23, 2014.  Accordingly, the court

20    dismisses Defendants' counterclaim for fraud for lack of subject matter jurisdiction due to
      Defendants' acknowledged failure to adhere to FIRREA's administrative claims process.  *See*

21    *Intercontinental Travel*, 45 F.3d at 1282-83 ("Because [plaintiff] failed to properly exhaust the
      statutorily mandated exhaustion requirements of [12 U.S.C.] § 1821(d), no jurisdiction exists

22    over its action.").

any capacity, is a party " even in the absence of the claim that initially justified removal. *See Brockman v. Merbank*, 40 F.3d 1013, 1015-16 (9th Cir. 1994) ("Once the case was removed to federal court by the FDIC, the district court had original jurisdiction over all claims by virtue of the FDIC's status as a party and by virtue of the RTC's [Resolution Trust Corporation] status as a party."). Thus, under the present facts, the court lacks discretion to remand the proceeding under 28 U.S.C. 1441(c). *See Brockman*, 40 F.3d at 1017 (citing *Buchner v. FDIC*, 981 F.2d 816, 820 (5th Cir. 1993) (declining to authorize a remand where federal court had original jurisdiction over action involving FDIC)).[16]

In sum, the court concludes that FDIC-R properly removed this action pursuant to 12 U.S.C. § 1819(b)(2)(B) after Defendants filed their answer alleging a counterclaim for fraud (albeit in the form of an affirmative defense) against FDIC-R. The court also concludes that despite the court's lack of subject matter jurisdiction to hear Defendants' counterclaim, the court continues to have subject matter jurisdiction over this proceeding by virtue of the broad grant of original jurisdiction regarding any suit to which FDIC-R is a party under 12 U.S.C. § 1819(b)(2)(A). Accordingly, the court DENIES Defendants'

---

[16] This case is distinguishable from *Allen v. FDIC*, 710 F.3d 978 (9th Cir. 2013), because in *Allen* the FDIC improperly removed the action from state court. The Ninth Circuit rejected the FDIC's assertion that "remand is precluded because the district court has jurisdiction under [12 U.S.C.] § 1819(b)(2)(A)." *Allen*, 710 F.3d at 984. The Court reasoned in part that if it declined to remand an action that the FDIC had improvidently removed on the ground that it had original jurisdiction under 12 U.S.C. § 1819(b)(2)(A), then nothing would stop the FDIC from improvidently removing any action to federal court. *See Allen*, 710 F.3d at 985. Indeed, the Ninth Circuit reasoned that "[a]ccepting [the FDIC's] argument would read the requirements of the removal provision out of § 1819 entirely." *Id.* Here, the court concludes that FDIC-R's removal of these proceedings from state court was proper, and thus the court's reasoning in *Allen* is inapplicable to this case.

1 motion to dismiss or for remand on grounds of lack of removal jurisdiction or subject

2 matter jurisdiction.

3 **C. Statute of Limitations**

4      Defendants also move for summary judgment on grounds of expiration of the

5 statute of limitations.  (Def. Mot. at 15-16.)  Defendants assert that the statute of

6 limitations on FDIC-R's judicial foreclosure action is governed by RCW 4.16.04.  (*Id.* at

7 16.)  RCW 4.16.04 states (in part and subject to an exception that is not relevant here)

8 that "[a]n action upon a contract in writing, or liability express or implied arising out of a

9 written agreement," must be commenced within six years.  RCW 4.16.04.  Defendants

10 assert that the limitations period began to run on August 10, 2008—the date upon which

11 the note matured and became due.  (Def. Mot. at 16.)  FDIC-R filed the action in state

12 court on August 29, 2012, which Defendants assert was "6 years and 19 days after the

13 maturity date," and thus "19 days after the statute of limitations."  (*Id.*)  Defendants'

14 motion for summary judgment based on expiration of the limitations period is predicated

15 upon an obvious mathematical error.  August 12, 2012, is not six years and 19 days after

16 the maturity date, but rather only four years and 19 dates after the maturity date.  Thus,

17 the six-year statute of limitations in RCW 4.16.04 had not run by the time FDIC-R filed

18 this action.

19      In any event, as FDIC-R points out, federal law extends the state law contract

20 limitations period by providing that FDIC-R's foreclosure claim did not accrue until the

21 date FDIC-R was appointed as Receiver of Westsound Bank on May 8, 2009.  *See* 12

22 U.S.C. § 1821(d)(2)(14).  Accordingly, FDIC-R had until May 8, 2015, to file this action.

1   Not only did FDIC-R file its judicial foreclosure action prior to the running of the

2   statutory period, the statutory period has not expired to date.  Accordingly, the court

3   DENIES Defendants' motion for summary judgment based on expiration of the

4   limitations period.[17]

5       **D.  Improper Party**

6           Defendants also move for summary judgment dismissing Ms. Davidyuk because

7   "there is no factual dispute that Larissa Davidyuk has no interest in the property, is not a

8   signatory to the promissory note or deed of trust, has no equity of redemption concerning

9   the property, and the property is being foreclosed upon to satisfy a judgment [to which]

10  she was not a party . . . ."  (Def. Mot. at 17.)  FDIC-R provides no response to this aspect

11  of Defendants' motion.  (*See generally* FDIC-R Resp.)  Indeed, FDIC-R implies in its

12  response that it will stipulate to her dismissal from this lawsuit in order to further its

13  assertion that Defendants' affirmative defenses are barred by *res judicata*.  (*See id.* at 15

14  ("FDIC-R does not dispute that the [c]ourt may dismiss [Ms.] Davidyuk from this

15  litigation, *without prejudice* to FDIC-R's right to assert a fraudulent transfer claim

16  against her hereafter.  Such dismissal removes any argument that the final two *res*

17  *judicata* application factors have not been met.") (italics in original).)  Defendants

18  interpreted FDIC-R's statement as a willingness to stipulate to her dismissal.  (Def. Reply

19  (Dkt. # 21) at 2, 10.)

20  _____

21      [17] The court notes that Defendants did not refer in their reply memorandum to their
    motion based on the statute of limitations or respond in any way to FDIC-R's arguments in its
22  responsive memorandum concerning the statute of limitations.  (*See generally* Def. Reply (Dkt.
    # 21).)

1    At oral argument, the court inquired whether FDIC-R was in fact willing to

2  stipulate to the dismissal of Ms. Davidyuk without prejudice to FDIC-R's right to assert a

3  fraudulent transfer action against her at a later date if so warranted.  Counsel for FDIC-R

4  equivocated and declined to so stipulate.  Counsel for Defendants correctly pointed out to

5  the court that FDIC-R had failed to respond to this portion of Defendants' cross motion

6  for summary judgment and, therefore, had failed to raise an issue of fact that would

7  warrant the denial of their motion with respect to Ms. Davidyuk's liability.  The court

8  agrees.  Accordingly, the court GRANTS Defendants' cross motion with respect to Ms.

9  Davidyuk and DISMISSES her with prejudice as a party to this action.

10  **E.  Defendants' Affirmative Defenses**

11    Defendants have asserted five affirmative defenses to FDIC-R's judicial

12  foreclosure action.  (Answer at 3.)  FDIC-R posits a variety of theories as to these

13  affirmative defenses are either not valid or do not prevent entry of summary judgment in

14  its favor.  (FDIC-R Mot. at 8-19.)  The court addresses these issues below and concludes

15  that none of Defendants' affirmative defenses prevent the court from granting FDIC-R's

16  motion for summary judgment and entering a decree of judicial foreclosure with respect

17  to the property at issue.

18  **1.  Judgment on the Note Does Not Bar a Subsequent Foreclosure Action**

19    The court begins with Defendants' fifth and last affirmative defense, in which they

20  assert that FDIC-R "obtained a money judgment against [Mr.] Davidyuk, . . . and cannot

21  by separate action (this case) seek remedies [i.e. foreclosure] available in that case."

22  (Answer at 3.)  As FDIC-R points, "Washington case law makes clear that . . . the holder

1    of the real property security has the option to sue on the note, obtain a judgment, and later

2    foreclose the security interest to satisfy any unpaid obligation of the borrower on the

3    note."  (FDIC-R Mot. at 9 (quoting *Boeing Empoyees' Credit Union v. Burns*, 272 P.3d

4    908, 913 (Wash. Ct. App. 2012).)  The court agrees.  Further, Defendants effectively

5    abandoned this affirmative defense in response to FDIC-R by acknowledging that FDIC-

6    R "correctly argues" that "Westsound Bank's judgment does not bar FDIC-R's

7    foreclosure action."  (Def. Mot. at 23-24.)  Accordingly, the court GRANTS FDIC-R's

8    motion for summary judgment with respect to Defendants' fifth affirmative defense.

9        **2.  *Res Judicata* Bars Fraud Set-Off Affirmative Defense**

10            FDIC-R also asserts that all of Defendants' affirmative defenses are barred by the

11   doctrine of *res judicata*.  (FDIC-R Mot. at 9-11.)  FDIC-R argues that Defendants could

12   have asserted all of its affirmative defenses in Westsound Bank's prior action on the

13   Note, but did not.  As a result, FDIC-R asserts that Defendants are barred from raising

14   them now.  (*See id.*)  The court, however, concludes that only one of Defendants'

15   affirmative defenses—Defendants' third affirmative defense for fraud—is barred by *res*

16   *judicata*.

17            In Washington, application of the doctrine of *res judicata* such that it will bar the

18   assertion of a claim in a second action requires a "concurrence of identity between the

19   two actions in four respects: (1) subject matter; (2) cause of action; (3) persons and

20   parties; and (4) the quality of the persons for or against whom the claim is made."  *U.S.*

21   *Bank of Wash. v. Hursey*, 806 P.2d 245, 248 (Wash. 1991).  The doctrine applies not only

22   to claims, but to affirmative defenses as well.  *See Symington v. Hudson*, 243 P.2d 484,

1  488 (Wash. 1952) ("[W]here a party has had a full and fair opportunity to make all of the

2  defenses at his command, and he elects not to disclose his claim . . . , the doctrine of *res*

3  *judicata* applies and he cannot later assert it.).  Defendants acknowledge that FDIC-R's

4  willingness to stipulate to the dismissal of Ms. Davidyuk "negate[s] any issues satisfying

5  the third and fourth requirements" for application of the doctrine.  (Def. Reply at 10.)

6  Thus, the only elements at issue are the first two:  identity of subject matter and cause of

7  action.

8        Problematically, the prior action by Westsound Bank was based solely on the Note

9  and was a foreclosure action.  Yet, two of Defendants' affirmative defenses are

10 specifically predicated on statutes that pertain solely to the foreclosure of real property,

11 and a third affirmative defense is also predicated on foreclosure of the property.  (*See*

12 Answer (Dkt. # 3-20) at 3 (Aff. Defs. ## 1, 2).)  For example, Defendants cited RCW

13 61.12.093 as the basis for their first affirmative defense that "[t]he property has been

14 abandoned for more than six months and the lender is not entitled to a deficiency."  (*Id.*)

15 This statute provides that lack of occupancy by the mortgagor for a continuous period of

16 six months or more prior to the decree of foreclosure, coupled with a failure to make

17 payment upon the mortgage obligation within that six-month period is prima facie

18 evidence of abandonment.  RCW 61.12.093.  Further, a mortgagee may not obtain a

19 deficiency judgment against a mortgagor in a judicial foreclosure of improved,

20 nonagricultural property, if the property has been abandoned for at least six months prior

21 to the decree of foreclosure.  RCW 61.12.094.  The court is at a loss to understand how

22 Defendants could have asserted a defense based on this statutory provision, which

1   expressly state that they are applicable "[i]n actions to foreclose mortgages on real

2   property," RCW 61.12.093, when the prior action by Westsound Bank was solely to

3   enforce the Note and not to foreclose on the property.

4       Likewise, Defendants expressly cite RCW 61.12.060 as the basis for their second

5   affirmative defense that "[t]he court should set an asset [sic] price after the sheriff sale to

6   determine a minimum confirmed credit to any deficiency." (Answer at 3.) The statutory

7   provision at issue sets forth procedures for the court to fix "a minimum or upset price to

8   which the mortgaged premises must be bid or sold before confirmation of the sale."

9   RCW 61.12.060. The statute expressly applies when the court is "rendering judgment of

10  foreclosure." *Id.* Like their first affirmative defense, Defendants' second affirmative

11  defense for an "upset price" applies only in the context of a foreclosure, which was not at

12  issue in Westsound Bank's prior action solely on the Note.

13      Finally, Defendants' fourth affirmative defense asserts that FDIC-R "failed to

14  mitigate its damages by protecting the property after it was abandoned." (Answer at 3.)

15  Again, this defense relates to the value of the real property and any deficiency judgment

16  that might be obtained though a foreclosure action. It does not relate to Westsound

17  Bank's action on the Note alone. Thus, the court concludes that the first two

18  requirements for application of *res judicata*—identity of subject matter and causes of

19  action—are not met with respect to Defendants' first, second, and fourth affirmative

20  defenses.

21      Defendants' third affirmative defense for fraud (*see* Answer at 3) is the only

22  Affirmative Defense that the court concludes is barred by the doctrine of *res judicata*.

1   Defendants assert that Mr. Davidyuk "is entitled to a set off for fraud committed by the

2   original lender [Westsound Bank] associated with false representations made to

3   Defendants about the feasibility of the project." (*Id.*)  This affirmative defense, which

4   relates to actions and alleged misrepresentations by Westsound Bank in issuing the

5   original Note, could and should have been raised by Defendants in Westsound Bank's

6   action on the Note.  Indeed, Defendants admit that FDIC-R "may have an argument that a

7   fraud claim is barred by *res judicata*, because such a claim goes to the judgment on the

8   Note." (Def. Reply at 11.)  The court agrees.  The subject matter and claim—alleged

9   fraud in the inducement in making the Note at issue—are the same.  As noted above,

10  because Ms. Davidyuk is no longer a party to these proceedings, the remaining

11  elements—related to the identity and quality of the parties—are not at issue.  Thus, all of

12  the elements for application of *res judicata* are present.  *See, e.g.*, *DeYoung v. Cenex,*

13  *Ltd.*, 1 P.3d 587, 594 (Wash. Ct. App. 2000) (ruling that prior grant of summary

14  judgment to junior mortgagee in action on promissory note, which was not appealed by

15  mortgagors, operated under doctrine of res judicata to bar relitigation of claim that

16  defense of satisfaction barred suit on note).  Thus, the court GRANTS FDIC-R's motion

17  for summary judgment with respect to Defendants' third affirmative defense based on

18  fraud.[18]

19  //

20  _____

21      [18] In addition, to the extent that this affirmative defense is properly construed as a
    counterclaim, the court is without subject matter jurisdiction due to Defendants' failure to adhere
22  to FIRREA's administrative claim process.  (*See supra* footnote 15.)  Thus, the court dismisses
    Defendants' counterclaim for fraud for lack of subject matter jurisdiction.

### 3.  Abandonment Affirmative Defense

As noted above, Defendants assert abandonment as their first affirmative defense. (Answer at 3.)  Defendants argue that, pursuant to RCW 61.12.093, they abandoned the property at issue because they have never lived in it and have no intention of doing do. (Def. Mot. at 21.)  As a result, Defendants assert that, pursuant to RCW 61.12.094, FDIC-R is not entitled to a deficiency judgment following foreclosure.  (*Id.*)  Although the court concluded that this affirmative defense is not barred by the doctrine of *res judicata* (*see supra* § III.E.2), the court concludes that Defendants are not entitled to assert their abandonment affirmative defense on other grounds.

FDIC-R argues that the Washington statutes cited above provide Defendants no relief because it is only the mortgagee—not Defendants as mortgagors—who may seek an abandonment finding under the statute.  (FDIC-R Resp. at 10-12.)  The court agrees. The special foreclosure provisions in RCW 61.12.093-.095 were enacted for the benefit of the mortgagee, not the mortgagor.  *See ING Bank v. Korn*, No. C09–124Z, 2011 WL 1637162, at *2 (W.D. Wash. Apr. 21, 2011) (citing *Metro. Fed. Sav. & Loan Ass'n v. Rob*erts, 863 P.2d 615 (Wash. Ct. App. 1994) (holding that the provisions of RCW 61.12.093-.095 apply where "the mortgagee is willing to forego a deficiency judgment . . .")).  Mortgagors, such as Defendants, are not entitled to seek a finding of abandonment and relief from a deficiency judgment.  *See Korn*, 2011 WL 1637162, at *2. Indeed, the statute expressly provides that it is the mortgagee, not the mortgagor, who must plead abandonment, if the mortgagee is to obtain the right to a judicial sale free of redemption rights.  *See* RCW 61.12.093.  Based on the straightforward statutory language

1   and the Washington case authority cited above, the court concludes that Defendants, as

2   mortgagors, are not entitled to assert this affirmative defense.  Accordingly, the court

3   GRANTS FDIC-R's motion for summary judgment with respect to Defendants' first

4   affirmative defense.[19]

5       **4.  Mitigation of Damages Affirmative Defense**

6       As their fourth affirmative defense, Defendants assert that FDIC-R "has failed to

7   mitigate its damages by protecting the property after it was abandoned."  (Answer at 3.)

8   Like their first affirmative defense, although the court concluded that this affirmative

9   defense was not barred by *res judicata*, the court concludes that FDIC-R is entitled to

10  summary judgment on this affirmative defense on other grounds.  (*See* FDIC-R Mot. at

11  12-15.)

12      FDIC-R argues, and the court is persuaded, that this affirmative defense is

13  essentially a restatement of Defendants' affirmative defense of abandonment.  (*See*

14  FDIC-R Resp. at 16.)  As discussed above, Defendants are not entitled under the statutory

15  language of RCW 61.12.093-.094 and Washington's case authority to unilaterally

16  eliminate the mortgagee's right to seek a deficiency judgment by abandoning the

17  property.

18

19

20      [19] Defendants reliance on *Ehsani v. McCullough Family P'ship*, Nos. 47024-8-I, 47081-7-I, 2002 WL 31106405 (Wash. Ct. App. 2002), an unpublished opinion of the Washington court of appeals, is misplaced.  (*See* Def. Mot. at 21-22; Def. Reply at 7.)  The court referred in passing to "abandonment of security" as one in a long list of "[r]ecognized equitable defenses."

21  *Id.* at *3.  This is the only reference to "abandonment of security" in the entire opinion, and it was not central to the court's holding.  The court does not find Defendants' heavy reliance on

22  this passing remark in an unpublished Washington Court of Appeals opinion to be persuasive.

1    FDIC-R also asserts that this affirmative defense is precluded by the plain

2 language of the deed of trust.  The Deed of Trust places the duty to protect the property

3 from damage or impairment on Defendants, as follows:

> Borrower shall not destroy, damage, or impair the Property, allow the
> Property to deteriorate or commit waste on the Property. . . . Borrower shall
> maintain the Property in order to prevent the Property from deteriorating or
> decreasing in value due to its condition. . . . Borrower shall promptly repair
> the Property if damaged to avoid further deterioration or damage. . . .
> Borrower is not relieved of Borrower's obligation for the completion of
> such repair or restoration.

8 (RJN Ex. 1 § 7.)  Further, although the Deed of Trust allows FDIC-R to secure the

9 property, the Deed of Trust expressly disclaims any duty on the part of FDIC-R to do so

10 and further provides that FDIC-R incurs no liability for not doing so:

> Lender may . . . secur[e] and/or repair[] the Property. . . . Although Lender
> may take action under this Section . . . , Lender does not have to do so and
> is not under any duty or obligation to do so.  It is agreed that Lender incurs
> no liability for not taking any or all actions authorized under this
> Section . . . .

14 (*Id.* Ex. 1 § 9.)  Thus, the language of the Deed of Trust expressly obviates Defendants'

15 affirmative defense, which is premised on a duty on the part of FDIC-R to protect the

16 property that is expressly disavowed by the contract or deed of trust.

17    Defendants counter that "[c]ontract interpretation is normally a question of fact for

18 the fact-finder," citing *Berg v. Hudsman*, 801 P.2d 222 (Wash. 1990).  (Def. Mot. at 27.)

19 Defendants misstate Washington law.  Under Washington law, the interpretation of a

20 contract can be a mixed question of law and fact.  *Mut. of Enumclaw Ins. Co. v. USF Ins.

21 Co.*, 191 P.3d 866, 875 n.9 (Wash. 2008)).  However, where the contract presents no

22 ambiguity and no extrinsic evidence is required to make sense of the contract terms,

ORDER- 30

1   contract interpretation is a question of law.  *Id.*; *see also Tanner Elec. Coop. v. Puget*

2   *Sound Power & Light*, 911 P.2d 1301, 1310 (Wash. 1996) ("Interpretation of a contract

3   provision is a question of law only when (1) the interpretation does not depend on the use

4   of extrinsic evidence, or (2) only one reasonable inference can be drawn from the

5   extrinsic evidence.").

6       Nevertheless, Defendants baldly "dispute that the contract language . . . should be

7   interpreted to mean that they agree to contract away their defense of mitigation of

8   damages, and assert that a more reasonable interpretation is that the contract holds that

9   the bank could not be held liable for damages to others caused by the property falling into

10   a state of disrepair."  (Def. Mot. at 27.)  Defendants cite no language in the Deed of Trust

11   to support the restriction on the bank's limitation of liability that they posit.  In the

12   absence of any such language, they make no argument as to why the language at issue is

13   ambiguous or why interpreting the provisions of the Deed of Trust in the manner they

14   propone would be reasonable.  Further, they present no extrinsic evidence in support of

15   their position.  Thus, they raise no factual issue with respect to the contract language at

16   issue, and the court therefore interprets the language in the Deed of Trust as a matter of

17   law.

18       Finally, the court also agrees with FDIC-R that where an action, such as this one,

19   is to collect on an unpaid debt and not for damages, there is no duty to mitigate.

20   *Metropolitan Mortg. & Secs. Co., Inc. v. Becker*, 825 P.2d 360, 363 (Wash. Ct. App.

21   1992).  Accordingly, the court grants FDIC-R's motion for summary judgment with

22   respect to Defendants' fourth affirmative defense.

ORDER- 31

### 5.  Upset Price Affirmative Defense

The only affirmative defense that remains is Defendants' second affirmative defense that "[t]he court should set an asset [sic] price after the sheriff sale to determine a minimum confirmed credit to any deficiency as allowed in RCW 61.12.060."  (Answer at 3.)  RCW 61.12.060 provides:

> In rendering judgment of foreclosure, the court shall order the mortgaged premises, or so much thereof as may be necessary, to be sold to satisfy the mortgage and costs of the action.  The payment of the mortgage debt, with interest and costs, at any time before sale, shall satisfy the judgment.  The court, in ordering the sale, may in its discretion, take judicial notice of economic conditions, and after a proper hearing, fix a minimum or upset price to which the mortgaged premises must be bid or sold before confirmation of the sale.
>
> The court may, upon application for the confirmation of a sale, if it has not theretofore fixed an upset price, conduct a hearing, establish the value of the property, and, as a condition to confirmation, require that the fair value of the property be credited upon the foreclosure judgment.  If an upset price has been established, the plaintiff may be required to credit this amount upon the judgment as a condition to confirmation.  If the fair value as found by the court, when applied to the mortgage debt, discharges it, no deficiency judgment shall be granted.

*Id.*  Under this language, Defendants' request for an upset price is a matter left to the court's discretion, and the court determines any such upset price only after entry of the foreclosure decree.  *See id.*  Thus, Defendants' minimum or upset price request does not prevent the court from granting FDIC-R's motion for a decree of foreclosure on summary judgment and an order directing the sale of the property.  Defendants do not dispute this interpretation of the statutory provisions (*see generally* Def. Mot.), and the court concludes that Defendants' request for an upset price does not prevent entry of summary judgment as requested by FDIC-R.  Thus, there is no reason for the court to rule with

1  respect Defendants' second affirmative defense at this time, and accordingly, the court

2  reserves judgment on this issue.

3  **F.  FDIC-R's Motion for Summary Judgment Decree of Judicial Foreclosure**

4  FDIC-R seeks a summary judgment decree of judicial foreclosure for the subject

5  property.  (*See generally* FDIC-R Mot.)  As discussed above, the court has disposed of all

6  of Defendants' affirmative defenses by either granting summary judgment in FDIC-R's

7  favor or concluding that they do not otherwise prevent entry of summary judgment

8  decree of judicial foreclosure in FDIC-R's favor.  (*See supra* § III.E.)  The court now

9  considers whether FDIC-R is entitled to a decree of judicial foreclosure on summary

10  judgment.

11  There is no dispute that on May 8, 2009, Westsound Bank was closed by the

12  Washington Department of Financial Institutions, and FDIC-R was appointed as

13  Westsound Bank's receiver.  (RJN Ex. 7; Rossiter Aff. ¶ 10.)  When FDIC-R is appointed

14  as receiver of a financial institution, it succeeds to "all rights, titles, powers and privileges

15  of" the failed institution.  12 U.S.C. § 1821(d)(2)(A)(i).  It may "take over the assets of

16  and operate" the failed institution with all the powers thereof.  12 U.S.C. §

17  1821(d)(2)(B)(i).  Thus, FDIC-R "was and remains the appropriate party in interest" in

18  matters relating to Westsound Bank's assets.  *See Yelomalakis v. FDIC*, 562 F.3d 56, 60

19  (1st Cir. 2009).

20  There is also no dispute that judgment was entered against Mr. Davidyuk on the

21  Note two days before Westsound Bank failed.  (RJN Ex. 5; Rossiter Aff. ¶ 9.)  That

22  judgment, along with the Deed of Trust, are now assets of FDIC-R.  There is no dispute

1    that Defendants have made no payment on the default judgment to either Westsound

2    Bank or FDIC-R since it was entered.  (Rossiter Aff. ¶ 11.)  Accordingly, as the holder of

3    the beneficial interest in the modified Deed of Trust, and successor-in-interest to the

4    judgment creditor, Westsound Bank, FDIC-R has all the same rights, powers, and

5    privileges with respect to those instruments as did Westsound Bank, and is equally

6    entitled to enforce and collect on them.  Because there are no genuine issues of material

7    fact concerning the foregoing, FDIC-R is entitled to a decree of judicial foreclosure with

8    respect to the property at issue and the court therefore GRANTS FDIC-R's motion for

9    summary judgment on that issue.

10       **G. FDIC-R's Request for Attorney's Fees**

11       The Deed of Trust provides for the recovery of reasonable attorney's fees and

12   costs "in any action or proceeding to . . . enforce any term of this Security Instrument."

13   (RJN Ex. 1 at 11 (§ 26); *see also id.* at 8 (§ 14, which states, "Lender may charge

14   Borrower fees for services performed in connection with Borrower's default, . . .

15   including, but not limited to attorney's fees").)  Defendants assert that the court should

16   decline to award any fees because FDIC-R "is not entitled to a deficiency judgment and

17   could have obtained the same result through the far less costly non-judicial foreclosure

18   process under Washington's Deed of Trust Act."  (Def. Mot. at 28.)  Defendants cite no

19   authority for the proposition that FDIC-R is not entitled to a deficiency judgment.

20   Indeed, at this point, whether the judgment that will be enforced through foreclosure will

21   result in any deficiency judgment is unknown and cannot be known until the sale is

22   confirmed.  In any event, Washington's Deed of Trust Act expressly provides that lenders

1    retain the right to foreclose deeds of trust as mortgages.  *See* RCW 61.24.020; *Wash. Fed.*

2    *v. Gentry*, 319 P.3d 823, 827 (Wash. Ct. App. 2014) ("[T]he act expressly provided that

3    lenders retained the right to foreclose deeds of trust as mortgages.").  Accordingly, the

4    court GRANTS FDIC-R's motion for an award of reasonable attorney's fees.  The court

5    will determine the amount of such fees following FDIC-R's submission of a request for a

6    specific amount, opportunity for a response by Defendants, and a determination of

7    reasonableness by the court.

8                                    **IV.  CONCLUSION**

9            Based on the foregoing, the court GRANTS FDIC-R's motion for summary

10   judgment seeking a decree of judicial foreclosure on the subject property and an award of

11   reasonable attorney fees and costs under the Deed of Trust (Dkt. # 9).  The court will

12   award a specific amount of fees and costs following further submissions from the parties.

13   In addition, the court DENIES Defendants' cross motion for summary judgment, except

14   with respect to its motion concerning Ms. Davidyuk (Dkt. # 12).  With respect to Ms.

15   Davidyuk, the court GRANTS Defendants' motion and DISMISSES her with prejudice

16   from this action.

17           Dated this 25th day of June, 2014.

18

19

20   _____

21   JAMES L. ROBART
     United States District Judge

22

ORDER- 35